## HUTCHINS & HUTCHINS v. INTERNATIONAL PAPER CO.

### Civil Action No. 1876.

District Court, W. D. Louisiana, Shreveport Division.

April 7, 1947.

Drew & Drew, of Minden, La., and A. M. Wallace, of Wallace & Stinson, all of Benton, La., for plaintiff.

D. W. Stewart, Jr., of Minden, La., Madison, Madison & Files and Geo. T. Madison, all of Bastrop, La., and Tucker, Bronson & Martin, of Shreveport, La., for defendant.

DAWKINS, District Judge.

This is one of some thirty cases in which the plaintiff sues for damages alleged to have been caused to its lands, livestock and crops by the draining of poisonous and deleterious chemicals into Bodeau Bayou. In each, defendant has moved for a more definite statement of facts and for a bill of particulars. The particulars called for are the following:

(1) How long has plaintiff been engaged in farming and livestock raising?

(2) Breeds, ages, sizes, and nature of deterioration of stock and dates when cattle were acquired.

(3) Time of damage and extent thereof in each instance to pastures, growing crops and the kinds of crops.

(4) Date when said conditions became permanent.

(5) Exact date of the actions by defendant alleged to have caused the damage.

In oral argument and briefs counsel agreed, and it was understood, that plaintiff should furnish the date on which the alleged conditions producing the damages became permanent.

The petition gives the description of each tract, according to the governmental subdivisions, and states that the living quarters of the farm or plantation are all on or very near to said Bodeau Bayou; it also gives the number and breed of cattle and the number of work stock, and alleges that said property was fully equipped for farming purposes; and that it is crossed or bounded by the said bayou and its tributaries in which the refuse and chemicals are drained from the defendant's paper mill. Further, that the defendant discharges the polluted waters into said stream and its tributaries at the rate of

more than 10,000 gallons per minute. The nature of the damages and the consequences of the drainage of the alleged poisonous liquids into the streams is described as follows:

"That as result of this deposit of waste matter, the fish and aquatic life in Bodeau Bayou has been entirely ruined, the fish destroyed and the restocking prevented, and the natural purposes of said stream ruined. That the water in said stream, instead of being free and sweet, fit for human and animal consumption as it was prior to the pollution, is heavily polluted with this black, poisonous substance that carries a vile odor and which renders said stream unfit for human or animal use; and said poisonous substances are detrimental to both and fatal at times and, in short, has rendered said stream and its tributaries entirely unfit and useless for agricultural purposes, cattle raising, human consumption, recreational purposes, or for any other useful purpose, and said stream has become a dead stream, highly impregnated with this poisonous substance, highly odorous and black in color. That not only has this condition ruined the usefulness of the stream, but has devalued and practically ruined the valuation of all farms located on said stream or its tributaries, and particularly the place belonging to these plaintiffs.

"Petitioners further show that no homestead can be comfortably maintained on the banks of these several streams; that the odors from dead fish and the odor from the polluted water renders impossible comfortable living conditions, all of which causes inconvenience, discomfort, mars the pleasure of the home and causes mental and physical suffering to the inhabitants. That your petitioners' home is located on the banks of the Platte River.

"That this polluted water is wholly unfit for cattle or livestock and at times proves fatal when used, but always causes, when used a shrinkage in the livestock in that the said animal will refrain from drinking said water and that when it is drunk it creates a condition in the animal that causes it to deteriorate, to lose weight, to become unhealthy, which requires more feed and attention and, in short, renders impossible the successful operation of livestock farms thereon.

"Petitioner further shows that some damage to the farm of your petitioners was caused in the past by this unlawful pollution, but that same was settled by compromise with a promise and an obligation on the part of the defendant to rectify this situation and to provide other methods for the taking care of this refuse matter; that instead of rectifying this situation, and in constant violation of the law and as a trespass on your petitioners' property, that the said defendant, in December 1945 and in January 1946, polluted said stream as above described, far worse than ever before, and that this pollution continued through January, 1946, and in March and April of 1946 this condition was again created, all of which brought about a condition far worse than ever before. That up to this time your petitioners felt that this condition created by the pollution of these streams would be rectified, knowing that same was a violation of law and that same was prohibited by the authorities of the State and the laws therein, but that now the said defendant admits that it intends to continue its pollution of said streams and to repeat the damages caused in December, January, March and April, aforesaid, and that same will be a continuous and permanent condition, now and henceforth, and that the damage which was created by this condition now becomes a permanent damage which was created by this condition which greatly lessens the value of your petitioner's place, ruins the sale and rental value thereof, prevents the successful raising of cattle and livestock, and causes same to deteriorate in value, and has deteriorated the value of the land and caused damage to the livestock on hand at this time, and inconvenience, annoyance, mental and physical suffering by the pollution of said waters and the presence of dead fish and other deleterious substances wherein it renders this defendant liable to this plaintiff."

The damages are itemized by giving the number and type of cattle with the alleged damage in dollars per head; and the

amount of damages caused by the odors and expense in attending the livestock during the periods when the refuse was discharged into the streams and the depreciation and value of the lands in dollars per acre.

In the alternative if damages are denied, plaintiff asks that the defendant be enjoined from continuing further the pollution of said streams and causing the injuries claimed.

The prayer is for trial by jury and for damages in the total amount claimed. It is argued in support of the motion for particulars that defendant has no means of ascertaining the exact information as to breeds, numbers, sizes and damages to each head and type of the cattle and work stock. However, the plaintiff as appears above, does give the breeds and number of cattle, separating milk cows and bulls with the amount of damage per head to each. The petition also states the manner and causes of the alleged damages. In order to recover plaintiff will have to offer proof in support of these allegations and it is not believed that they are required to further describe said cattle and the exact loss in pounds of each animal. These details are a matter of evidence to be offered at the trial.

As to the damages to crops and lands, the complaints allege the periods of time as in the fall of 1945 and early part of 1946. The petitions in the several suits were filed in the spring and summer of 1946, well within the one year prescriptive period prescribed by Article 3536 of the Louisiana Code.

As to the time and place of doing the acts charged to defendant, as causing the damages, the information as to when the liquid was discharged from the plant is all within the knowledge and possession of the defendant. It would, therefore, appear sufficient for the purposes of prescription if the plaintiff states the periods during which the damages alleged occurred to the land and stock. What is alleged is sufficiently certain to permit the defendant to answer and plead prescription, if desired. Prescription begins when the damage is done rather than at the time of the doing of the acts by defendant which precipitated the liquid into the stream.

With respect to the alternative demand for injunction this is a matter which the Court, without the aid of the jury, could determine by a proper consideration of the equities and circumstances of the entire controversy.

The conclusion is that when and if the particulars with respect to the time when the injury to the property became permanent are furnished, there will be no need for further details and elaboration of the allegations with respect to the damages. Any details which counsel for defendant may desire to develop can be obtained through interrogatories.

Defendant has also moved to strike allegations to the effect that it has been prosecuted and convicted for discharging this liquid into these streams, for the reason that the same is irrelevant and would be prejudicial before a jury. The point is well taken and these allegations should be stricken.

The motion for particulars will therefore be denied, except to the extent to which they are to be furnished by agreement.

The ruling in this instance would seem to dispose of similar motions in the other cases.

Proper decree should be presented.